# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID P. LEIBOWITZ, Trustee of ) <br> The Bankruptcy Estate of Mark Jacoby, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> DUPAGE COUNTY ILLINOIS, JOHN E. ) <br> ZARUBA, in his official capacity as ) <br> Sheriff of DuPage County, Illinois, and ) <br> DUPAGE COUNTY DEPUTY SHERIFFS ) <br> TOM REPA, PHILIP HECK, and ) <br> JOSEPH PROSSER, individually, ) <br> ) <br> Defendants. ) | Case No. 12 C 6539 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Mark Jacoby filed this section 1983 lawsuit for compensatory and punitive damages against DuPage County Sheriff John E. Zaruba and three deputy sheriffs. As the pleadings now stand, Jacoby alleges excessive force arising from his detention at the DuPage County Jail and a *Monell* claim against Sheriff Zaruba in his official capacity, alleging failure to train and supervise subordinates. He has sued the County of DuPage as the indemnitor of the county officials.[1]

After filing the complaint, Jacoby petitioned in bankruptcy; thereafter, David P. Leibowitz, the bankruptcy trustee, was substituted as plaintiff on behalf of the creditors of the bankruptcy estate. All defendants have moved for summary judgment. For the reasons stated below, the officer defendants' motion is denied and the Sheriff's motion for judgment on the

---

[1] This court's jurisdiction rests on 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2), as the events giving rise to plaintiff's claims occurred in this judicial district.

*Monell* claim is granted. Plaintiff has filed a cross-motion for summary judgment. This motion is denied.

## BACKGROUND[2]

Mark Jacoby was arrested on the afternoon of June 20, 2011 by officers of the Glen Ellyn Police Department and taken to the Glen Ellyn lockup where he remained for two to three hours. He was charged with three misdemeanor offenses, two of domestic battery and one of criminal trespass to vehicles. At the time of his arrest, Jacoby had been taking seven prescription medications to treat, among other illnesses, bipolar disorder, schizoaffective disorder, high blood pressure, and diabetes. At 5 feet 9 inches in height, he weighed 280 pounds.[3]

Officers of the Glen Ellyn Police Department handcuffed Jacoby behind his back and drove him to the DuPage County jail. Joseph Prosser, the watch commander, undertook intake responsibility for Jacoby. Upon arrival, Jacoby was in an agitated state and at least somewhat uncooperative[4] with Prosser. He refused to answer medical status questions and refused to stay

---

[2] The facts in this section are taken from the parties' Local Rule 56.1 statements and supporting documents and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

[3] The parties dispute whether Jacoby was obese, morbidly obese, or "hefty." According to a National Institute of Health calculator of body mass index, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm, Jacoby had a BMI of 43.1. A BMI of 30.0 and above is classified as obese. (The term "morbidly obese" is not used.)

[4] Defendants state he was "generally uncooperative," refusing to answer standard intake questions, including his medical condition, and disobeying orders. Jacoby admits that he disobeyed an order to face the wall but denies that he disobeyed any other order or that he engaged in any physical resistance to the officers. Prosser's testimony is substantially consistent with Jacoby's statement. (*See* dkt.140-5, Prosser dep. at 82–86). Jacoby concedes that the intake officer perceived the situation as an emergency.

situated facing the wall. Due to his agitated state and his refusal to answer questions and face the wall, Prosser summoned Tom Repa and Philip Heck, who were members of the Corrections Emergency Response Team, to handle Jacoby. (CERT team members receive extra training in handling incidents including the use of force.) Prosser grabbed him on the right shoulder and, along with Repa and Heck, escorted Jacoby to a receiving cell.

In the receiving cell, one of the defendant deputies pushed Jacoby from behind and on his upper back, causing him to fall face down on his belly and right arm onto a mat on a bed or the floor.[5] One of the deputies folded the mat over him and pressed downward on his back and arms such that Jacoby felt suffocated. One or more deputies proceeded to remove the handcuffs by applying upward force to his arms. By this time, approximately 13 people were in the room, including a nurse, who performed a medical examination. The holding cell incident took 7 to 10 minutes.

Jacoby got up and changed into a jail uniform as directed. He noticed his right hand swelling and his arm turning blue, red, and purple from fingers to shoulder. Two days later, Jacoby was taken to a hospital for examination. The examining physician reported that he had suffered a spiral fracture of the right humerus and, although the physician recommended surgery, Jacoby declined. (Several years later, he had surgery at a Johns Hopkins University hospital.) He was transported back to the jail where he remained until he was released on bail on July 1, 2011.

Under Sheriff's Department policy, "use of force" may occur when a deputy's hands are placed upon an inmate and the deputy is directing the inmate's movements. All of the individual defendants admit they used force on Jacoby.

---

[5] Jacoby testified that he fell to the floor (dkt. 148, Jacoby dep. at 34–35), but he does not disputed that he was pushed onto a cot or bed in the receiving room. (Dkt. 152 ¶¶ 15–17.) The difference is immaterial.

A general order required deputy sheriffs to make observations of ease of movement in newly admitted inmates. Prosser, however, had received no specific training in how to make observations of ease of movement in newly admitted inmates and had no understanding of how to make an observation of an inmate's ease of movement while that inmate was wearing handcuffs.[6]

Other inmates had arrived at the jail who could not get their arms behind their back because of obesity (or heftiness) and needed two sets of handcuffs (Whether Jacoby was wearing two sets of handcuffs is not indicated in the statements of material fact), but the Sheriff had no special or general procedure to be followed when a grossly overweight inmate is handcuffed with his hands behind his back and placed face down on a bed.

## Summary Judgment Standards

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A genuine issue as to any material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "While the evidence is viewed in a light most favorable to the non-moving party, the non-moving party musty come forward with specific facts showing that there is a genuine issue for trial. …Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Armato* v. *Grounds*, 766 F.3d 713 (7th Cir. 2014).

---

[6] Defendants dispute this statement as not documented in the record. Prosser during his deposition conceded it, however. (Dkt. 148, Prosser dep. at 50.)

**Excessive Force Claim**

A claim of excessive force must be analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Defendants do not contend that they are entitled to summary judgment because no reasonable jury could find the defendants' actions objectively unreasonable. Rather, they argue that Jacoby has failed to produce evidence that any of the individual defendants was personally involved in the alleged excessive use of force. They point to Jacoby's admission that he is unable to identify which of the officers pushed him down and removed his handcuffs in a manner that allegedly caused his arm to fracture. Nor could he describe the officers he met that day.

Defendants rely on the principle that, in order to succeed on an individual capacity claim against a state actor under § 1983, a plaintiff must show that a defendant was personally involved in the alleged constitutional deprivation. *Palmer* v. *Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Duncan* v. *Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Likewise, supervisors may only be held liable where they "kn[ew] about the unconstitutional conduct [of a subordinate] and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)); *see also Crowder* v. *Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

That Jacoby is unable to identify specifically which officer(s) pushed him and/or fractured his arm, however, does not defeat Jacoby's claim under these principles. As the Seventh Circuit explained in *Miller* v. *Smith*, 220 F.3d 491, 495 (7th Cir. 2000):

5

> [W]hile it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of § 1983 if he acts or *fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights. Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable.

This is not a case in which nobody did it. The defense witnesses simply have failed or declined to remember. Should the jury find excessive force, it is unlikely that it would find no individual defendant responsible.[7]

### *Monell* Claim

Plaintiff argues three theories of municipal liability: (1) failure to train officers to recognize the danger of placing a morbidly obese person face down on a mat while applying upward force to his arms with his hands behind his back, (2) failure to train officers to distinguish mental illness from lack of cooperation by a person in custody, and (3) failure to train officers to avoid the method of restraint of placing a mat on top of a detainee and then pressing down on it where the detainee is mentally ill and/or morbidly obese. The Sheriff contends that Jacoby has failed to produce sufficient evidence to sustain a claim of municipal liability based on the Sheriff's failure to train or supervise deputy sheriffs.

Local governments may be held liable for constitutional violations arising from their policies, customs, or practices. *See Monell* v. *Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978); *see also Darchak* v. *City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009). Under "limited circumstances, a local government's decision not to train certain employees

---

[7] A jury instruction may be useful to avoid a situation where the jury would find excessive force but be unable to find by a preponderance of the evidence which of the defendants, specifically, is responsible. *See Thomas* v. *Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010) ("[A] municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create an *inconsistent* verdict.").

about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick* v. *Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350 (2011). Municipal culpability for a deprivation of rights, however, "is at its most tenuous where a claim turns on a failure to train." *Id.* As such, "[a] municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to *deliberate indifference* to the rights of the individuals with whom the officers come into contact." *Jenkins* v. *Bartlett*, 487 F.3d 482, 492 (7th Cir.2007) (emphasis added). This is a stringent standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.* v. *Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382 (1997)).

Ordinarily, a plaintiff must show a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference for purposes of failure to train. *See id.* at 62. Jacoby has not identified a single similar incident that resulted in a constitutional violation. Thus, he must resort to a single-incident-liability theory to survive summary judgment on his failure-to-train claim. That approach finds its origin in *City of Canton, Ohio* v. *Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989), where the Court left open the possibility that a pattern of similar violations might not be necessary to show deliberate indifference.

As recounted by the Court in *Connick*, the *Canton* "Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10). "Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer

7

lacking specific tools to handle that situation will violate citizens' rights," the Court explained, "a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights." *Id.*at 64–65; *see also Jenkins*, 487 F.3d at 492 (recognizing that a municipality may be deemed to have acted with deliberate indifference "when, in light of the duties assigned to specific officers… the need for more or different training is so obvious that the deficiency exhibits deliberate indifference on the part of municipal policymakers).".

Jacoby's evidence, viewed in a light most favorable to him, does not permit an inference that any of his *Monell* theories could succeed, primarily because he presents no evidence that it is highly, or even somewhat, predictable that an officer who lacks specific tools to handle an individual who presents in an agitated state and refuses to cooperate in a medical assessment is likely to violate his constitutional rights such that failure to train amounts to deliberate indifference. Although it may have been obvious to the officers that Jacoby was severely obese, plaintiff has no evidence specific to obesity that would distinguish such a person from any other detainee in the same situation. For example, he proffers no expert testimony about law enforcement practices that suggest that acceptable practices in correctional or detention settings should include particular protocols for obese or agitated detainees, nor does he identify a course of training that might have made a difference here. In short, the issue in this case is straightforward. It is whether the individual defendants used excessive force against Jacoby on this single occasion in violation of the Fourth Amendment.

For these reasons, the Sheriff is entitled to summary judgment on the failure-to-train claim.

**Plaintiff's Cross-Motion**

Plaintiff's cross-motion for summary judgment, rather than seeking judgment as a matter of law, asks the court to find certain facts established. Under Federal Rule of Civil Procedure 56(g), "if the court does not grant all the relief requested by the motion [for summary judgment]," the court may make findings of material fact that appear to be undisputed. The rule presupposes that the motion asks for judgment, which plaintiff does not, making his motion appear to be more in the nature of requests to admit. Furthermore, the advisory notes explain that "[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." Fed. R. Civ. P. 56(g), advisory committee's note. As this case is headed for trial, the better course is to hear the witnesses through direct and cross examination. Plaintiff's motion is therefore denied.

**CONCLUSION AND ORDER**

Plaintiff's motion for summary judgment (dkt. 146) is denied. All defendants' motion for summary judgment on the excessive force claim (dkt. 114) is denied. Sheriff Zaruba's motion for summary judgment on the *Monell* claim (dkt. 114) is granted. This case will be called for a status hearing on April 17, 2018, at 11:00 a.m. to set a date for trial. In the meantime, the parties are directed to participate in good faith discussions about whether the case can be settled and to report on the status of those discussions at the status hearing.

Dated: March 7, 2018

_____
U.S. District Judge Joan H. Lefkow